STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

---

LEE FISHER
52 Brookhaven Lane
Lancaster, New York 14086,

                Plaintiff,

v.

COUNTY OF ERIE
95 Franklin Street
Buffalo, New York 14202, and

TIMOTHY HOWARD, Individually and
in his capacity of Sheriff of
Erie County, New York
10 Delaware Avenue
Buffalo, New York 14202,

                Defendants.

**SUMMONS**
(Served with Complaint)

Index No.: _____

*This paper received at the Erie County Attorney's Office from Anne Nicholson the 21st day of April, 2010 at 1050 a.m./p.m.*

*[signature] Assistant County Attorney*
*Jeannine Purtell*

---

TO THE ABOVE-NAMED DEFENDANTS:

     YOU ARE HEREBY SUMMONED AND REQUIRED to serve upon the Claimant's attorney, at the address stated below, a written Answer to the attached Complaint.

     If this Summons is served upon you within the State of New York by personal service you must respond within TWENTY (20) days after service, not counting the day of service. If this Summons is not personally delivered to you within the State of New York, you must respond within THIRTY (30) days after service is completed, as provided by law.

     If you do not respond to the attached Complaint within the applicable time limitation stated above, a Judgment will be entered against you, by default, for the relief demanded in the Complaint, without further notice to you.

     This action is brought in the County of Erie because of the location of the incident and Plaintiff's residence.

DATED:    West Seneca, New York
             April 14, 2010

                                        _____
                                        David W. Polak, Esq.
                                        DAVID W. POLAK ATTORNEY AT LAW, P.C.
                                        *Attorneys for Plaintiff*
                                        1370 Union Road, Suite 100
                                        West Seneca, New York 14224
                                        Telephone: (716) 675-2889

STATE OF NEW YORK
SUPREME COURT :   COUNTY OF ERIE

---

LEE FISHER,

                Plaintiff,

v.

COUNTY OF ERIE and
TIMOTHY HOWARD, Individually and
in his capacity of Sheriff of
Erie County, New York,

                Defendants.

COMPLAINT

Index No.:_____

---

       The plaintiff, LEE FISHER, through his attorney, David W. Polak Attorney At Law, P.C., submits the following as and for his Complaint, and alleges that:

       1.    At all times the plaintiff, LEE FISHER, has and continues to be a resident of the Town of Lancaster, County of Erie and State of New York.

       2.    At all times the defendant, COUNTY OF ERIE (hereinafter "COUNTY"), has and continues to be a governmental subdivision created under the laws of the State of New York. The COUNTY is responsible for the management and operations of the Erie County Holding Center (hereinafter "ECHC") which is located at 10 Delaware Avenue, Buffalo, New York.

       3.    At all times relevant to this action, defendant TIMOTHY HOWARD was the Sheriff of Erie County, New York. In his official capacity as Sheriff, TIMOTHY HOWARD is responsible for the administration and implementation of policies and procedures at ECHC as well as the custody, control and charge of inmates confined within ECHC.

4. Defendants are legally responsible, in whole or in part, for the operation of ECHC, and for compliance with state and federal laws, rules and regulations for persons incarcerated in ECHC, including the plaintiff.

5. At all times herein relevant, the defendants or their predecessors in office have acted or failed to act, as alleged herein, under color of state law.

## STATEMENT OF FACTS

6. On or about February 18, 2009 at approximately 6:45 a.m., LEE FISHER was arrested by two (2) Buffalo Police Officers pursuant to a warrant on Genesee Street in the City of Buffalo, County of Erie and State of New York.

7. The aforementioned warrant was issued by the Town of Aurora, accusing the plaintiff of the misdemeanor charge of issuing a bad check based upon a misdemeanor complaint filed by the Erie County Sheriff's Department and dated November 28, 2005.

8. On or about February 18, 2009 at approximately 7:00 a.m., after his arrest, LEE FISHER was transported and admitted to ECHC, where he was placed in a holding area to await arraignment.

9. LEE FISHER was subsequently held in the holding area until he was arraigned on February 20, 2009 in Aurora Town Court at approximately 6:00 p.m.

10. LEE FISHER was advised by deputies at the ECHC that he was to be arraigned in the Town of Marilla, but the Town of Marilla had no records of a bench warrant for Mr. FISHER.

11. After contacting the Town of Marilla, plaintiff's counsel learned that the Marilla Justice Court had no records on Mr. Fisher and could not arraign him;

thereafter, plaintiff's counsel contacted acting Supreme Court Justice William Boller, who oversees the Justice Courts in the 8th Judicial District, only to learn that the charge originated in the Town of Elma but transferred to the Town of Aurora.

12. On February 20, 2009, immediately following his appearance in Aurora Town Court, LEE FISHER was released from the custody of the defendants.

13. That at all times herein relevant the COUNTY was acting under the color of state law.

14 Upon information and belief, the COUNTY knew that its employees were violating the constitutional rights of inmates, such as LEE FISHER.

15. Upon information and belief, the COUNTY deliberately implemented a policy of depriving inmates, such as LEE FISHER, of the rights described within this Complaint, evidencing deliberate indifference to the health and safety of inmates of ECHC, such as LEE FISHER, in violation of the rights, privileges or immunities of those inmates as secured or protected by the Constitution of the United States, Amendment XIV.

16. The above-described actions subjected LEE FISHER to a deprivation of rights and privileges secured to him by the Constitution and laws of the United States, including the Fourteenth Amendment to the United States Constitution, within the meaning of 42 U.S.C. §1983.

16. The above-described actions by the COUNTY subjected LEE FISHER to a deprivation of rights and privileges secured to him by the Constitution and statutes, rules and regulations of the State of New York.

17. Upon information and belief, at all times relevant, the COUNTY was

aware of the above-mentioned violations of state and federal laws, rules and regulations at ECHC, but failed to take effective measures to reduce or eliminate such violations. Such failure amounted to a deliberate indifference to the health, safety and rights of inmates, including LEE FISHER.

18. As a direct and proximate result of the above-mentioned unconstitutional acts of the COUNTY, LEE FISHER sustained mental anguish and was prevented from transacting his usual business.

19. That at all times herein relevant TIMOTHY HOWARD was acting under the color of state law.

20. Upon information and belief, TIMOTHY HOWARD knew that employees of ECHC and under his control were violating the constitutional rights of inmates, such as LEE FISHER.

21. Upon information and belief, TIMOTHY HOWARD deliberately implemented a policy of depriving inmates, such as LEE FISHER, of the rights described within this Complaint, evidencing deliberate indifference to the health and safety of inmates of ECHC, such as LEE FISHER, in violation of the rights, privileges or immunities of those inmates as secured or protected by the Constitution of the United States, Amendment XIV.

22. The above-described actions subjected LEE FISHER to a deprivation of rights and privileges secured to him by the Constitution and laws of the United States, including the Fourteenth Amendment to the United States Constitution, within the meaning of 42 U.S.C. §1983.

23. The above-described actions by TIMOTHY HOWARD subjected

LEE FISHER to a deprivation of rights and privileges secured to him by the Constitution and statutes, rules and regulations of the State of New York.

24. Upon information and belief, at all times relevant, TIMOTHY HOWARD was aware of the above-mentioned violations of state and federal laws, rules and regulations at ECHC, but failed to take effective measures to reduce or eliminate such violations. Such failure amounted to a deliberate indifference to the health, safety and rights of inmates, including LEE FISHER.

25. As a direct and proximate result of the above-mentioned unconstitutional acts of TIMOTHY HOWARD, LEE FISHER sustained mental anguish and was prevented from transacting his usual business.

## UNNECCESSARY DELAY IN ARRAIGNMENT

26. In accordance with New York State Criminal Procedure Law §120.90, upon arresting a defendant pursuant to a warrant in the county in which the warrant is returnable, the defendant must be brought before the local criminal court in which such warrant is returnable without unnecessary delay.

27. The warrant upon which LEE FISHER was arrested was issued by the Town of Aurora, located in the County of Erie, State of New York.

28. LEE FISHER was arrested at approximately 6:45 a.m. on Wednesday, February 18, 2009.

29. The arresting officers thereafter relinquished control to the ECHC, under the control of the COUNTY and TIMOTHY HOWARD, as the Town of Aurora/Marilla Court was not available at the time of arrest.

30. Pursuant to CPL §120.90(5), when the local criminal court to

conduct arraignment is a town court and is unavailable, the defendant must be brought before any village court embraced by such town, or any local criminal court of an adjoining town or city of the same county.

31. Therefore, the COUNTY and TIMOTHY HOWARD were required by statute to bring LEE FISHER to any village court embraced by the Town of Aurora or any local criminal court of an adjoining town or city within Erie County.

32. The COUNTY and TIMOTHY HOWARD failed to produce LEE FISHER before a court until his arraignment on Friday, February 20, 2009, approximately three (3) days following his arrest, which constituted unnecessary and unreasonable delay.

33. No attempt was made by the COUNTY or TIMOTHY HOWARD to produce LEE FISHER for arraignment at the next regularly scheduled court session of the Town of Aurora Court, or any other local court, following his arrest.

34. LEE FISHER was arraigned after three (3) days due to his attorney seeking to procure a judge to arraign him, with no effort made by the COUNTY or TIMOTHY HOWARD whatsoever to do so.

**FACILITY HOLDING AREAS**

35. Upon information and belief, ECHC's "holding areas" are designed for short-term holding of inmates during the intake, booking and screening process. Lacking beds, mattresses and the dayroom and shower capabilities required for standard intake housing, this area held approximately fourteen (14) inmates including the plaintiff for the duration of his stay at ECHC and contained only one (1) sink and toilet. As such, this holding area was not rated for standard inmate housing per the

Maximum Facility Capacity established by the New York State Commission of Correction, in violation of 9 NYCRR §7040.5(a), (c), and (d).

36. An initial screening and risk assessment of each inmate should occur immediately upon admission to ECHC in accordance with 9 NYCRR §7013.7(a), and an immediate decision concerning the disposition of each inmate shall be made based upon said initial screening and risk assessment in accordance with 9 NYCRR §7013.7(c).

37. Upon his admission to ECHC, defendants failed to perform an initial screening and risk assessment of LEE FISHER in violation of 9 NYCRR §7013.7(a), and therefore a subsequent violation of 9 NYCRR §7013.7(c), as LEE FISHER was held in a holding area for approximately three (3) days.

38. Following an inmate's initial screening and risk assessment and prior to each inmate's primary housing assignment, the inmate shall temporarily be placed in a housing unit within a housing area designated for classification purposes pursuant to 9 NYCRR §7013.8(a). The New York State Commission on Correction issued a Maximum Facility Capacity for ECHC on November 8, 2006, limiting the time the time an inmate may be held in a multiple occupancy holding area to four (4) hours.

39. LEE FISHER was held in a holding area for approximately three (3) days, far in excess of the limit of four (4) hours established by the New York State Commission on Correction and in violation of Part 7013 of 9 NYCRR.

40. The New York State Commission on Correction issued a Directive on February 18, 2009 pursuant to Correction Law §46(4) directing Sheriff HOWARD to assign inmates proper housing in accordance with the limitations and conditions of the

Maximum Facility Capacity for ECHC; to wit, inmates could not be detained in the facility's holding areas for periods longer than designated in the Commission's Maximum Facility Capacity—twelve (12) hours for individual occupancy holding and four (4) hours for multiple occupancy holding. The New York State Commission on Correction issued an Assessment of the Directive Response by Sheriff HOWARD on May 22, 2009. At such time, the deficiency articulated in this paragraph remained "open".

41. The New York State Commission on Correction issued a Directive on February 18, 2009 pursuant to Correction Law §46(4) directing Sheriff HOWARD to ensure that the total number of inmates confined within ECHC does not exceed the maximum facility capacity of such facility. The New York State Commission on Correction issued an Assessment of the Directive Response by Sheriff HOWARD on May 22, 2009. At such time, the deficiency articulated in this paragraph remained "open".

42. The New York State Commission on Correction issued a Directive on February 18, 2009 pursuant to Correction Law §46(4) directing Sheriff HOWARD to conduct an initial screening and risk assessment of each inmate upon admission, and upon completion promptly place such inmate in a housing unit designated for classification purposes. The New York State Commission on Correction issued an Assessment of the Directive Response by Sheriff HOWARD on May 22, 2009. At such time, the deficiency articulated in this paragraph remained "open".

43. The New York State Commission on Correction issued a Directive on February 18, 2009 pursuant to Correction Law §46(4) directing Sheriff HOWARD to

prepare and distribute to each prisoner, upon admission, a written copy of the facility rules and information, which shall include instructions and procedures relative to inmate grievances. The New York State Commission on Correction issued an Assessment of the Directive Response by Sheriff HOWARD on May 22, 2009. At such time, the deficiency articulated in this paragraph remained "open".

44. The New York State Commission on Correction issued a Directive on February 18, 2009 pursuant to Correction Law §46(4) directing Sheriff HOWARD to provide a copy of the written rules of inmate conduct to each inmate upon admission to the facility. The New York State Commission on Correction issued an Assessment of the Directive Response by Sheriff HOWARD on May 22, 2009. At such time, the deficiency articulated in this paragraph remained "open".

45. As a result of the unlawful stay of approximately three (3) days in a holding area instead of being placed in a housing unit, LEE FISHER was denied a bed, mattress, clean bedding, showers, and required personal health care and hygiene items.

46. As a result of the unlawful stay of approximately three (3) days in a holding area instead of being placed in a housing unit designated for classification purposes, LEE FISHER was denied the benefit of the additional floor space and toilet and sink access that would accompany a proper admission to a standard inmate housing unit.

47. As demonstrated in the above allegations, Sheriff HOWARD, together with the administration and staff of the ECHC, under the direction of the COUNTY, was in violation of the New York Commission on Correction regulations

relative to the detention of LEE FISHER in a non-standard facility holding area, specifically sections 7013.8(a) and 7040.3 of Title 9 NYCRR.

## PERSONAL HYGIENE ITEMS AND BEDDING

48. Pursuant to 9 NYCRR §7005.9(a), each county correctional facility must provide an inmate with an issue of clean bedding in good condition upon such inmate's admission to a facility.

49. The New York State Commission on Correction issued a Directive on February 18, 2009 pursuant to Correction Law §46(4) directing Sheriff HOWARD to provide each inmate, upon admission to the facility and at facility expense, with an issue of clean bedding in good condition. The New York State Commission on Correction issued an Assessment of the Directive Response by Sheriff HOWARD on May 22, 2009. At such time, the deficiency articulated in this paragraph remained "open".

50. Upon LEE FISHER's admission to ECHC, he was not provided with any bedding, in violation of 9 NYCRR §7005.9(a).

51. Pursuant to 9 NYCRR §7005.6(a), each county correctional facility must provide an inmate with an issue of personal hygiene items, including soap, a toothbrush, toothpaste, a drinking cup, toilet paper and a bath towel.

52. The New York State Commission on Correction issued a Directive on February 18, 2009 pursuant to Correction Law §46(4) directing Sheriff HOWARD to provide each inmate, upon admission to the facility and at facility expense, with an issue of personal health care items, including but not limited to soap, a toothbrush, toothpaste, a drinking cup, toilet paper and a bath towel. The New York State Commission on Correction issued an Assessment of the Directive Response by Sheriff

HOWARD on May 22, 2009. At such time, the deficiency articulated in this paragraph remained "open".

53. Upon LEE FISHER's admission to ECHC, he was not provided with any of the aforementioned personal hygiene items, in violation of 9 NYCRR §7005.6(a).

54. Pursuant to 9 NYCRR §7005.2(b), hot showers shall be made available to all prisoners confined in special housing, including those in admissions/orientation housing, at least three (3) times per week.

55. The New York State Commission on Correction issued an Assessment of the Directive Response by Sheriff HOWARD on May 22, 2009. The Commission found that in the course of their investigations at ECHC, it was noted that ECHC administration posted a written order notifying staff that un-arraigned prisoners were not to receive showers. Further, ECHC facility policy 01.00.90 states that the shower room is off-limits to un-arraigned inmates. Therefore, the Commission found that the deficiency of failing to provide un-arraigned inmates showers remains "open".

56. LEE FISHER was confined in ECHC's "special housing" as an un-arraigned inmate for at least three (3) days and had no access to a hot shower, in violation of 9 NYCRR §7005.2(b).

## FACILITY RULES

57. Pursuant to 9 NYCRR §7002.9(a), each local correctional facility shall distribute to all inmates, upon admission, a copy of facility rules and information.

58. Upon his admission to ECHC, LEE FISHER was never issued a copy of the facility rules and information, in violation of 9 NYCRR §7002.9(a).

59. Pursuant to 9 NYCRR §7006.3(c), each local correctional facility

shall distribute to all inmates, upon admission, a copy of the rules of inmate conduct.

60. Upon his admission to ECHC, LEE FISHER was never issued a copy of the rules of inmate conduct, in violation of 9 NYCRR §7006.3(e).

### NEGLIGENCE

61. That the aforementioned violations of LEE FISHER's state and federal constitutional rights resulted solely and wholly by reason of the negligence of the COUNTY without any negligence on part of the LEE FISHER, in contributing thereto.

62. As a result of the aforementioned negligence, LEE FISHER was caused to sustain significant economic loss as a result of losing a commercial construction contract due to his inability to perform while he was being unreasonably detained by the COUNTY awaiting arraignment.

63. That the aforementioned violations of LEE FISHER's state and federal constitutional rights resulted solely and wholly by reason of the negligence of the TIMOTHY HOWARD without any negligence on part of the LEE FISHER, in contributing thereto.

64. As a result of the aforementioned negligence, LEE FISHER was caused to sustain significant economic loss as a result of losing a commercial construction contract due to his inability to perform while he was being unreasonably detained by TIMOTHY HOWARD awaiting arraignment.

### PUNITIVE DAMAGES

65. Each of the defendants has deprived the plaintiff of his rights with reckless and callous indifference, for which punitive damages should be assessed against each defendant.

## PRAYER FOR RELIEF

66. The plaintiff demands judgment against the defendants, jointly and severally, for compensatory and special damages in a sum in excess of ten million dollars ($10,000,000.00), for punitive damages, for attorneys' fees pursuant to 42 U.S.C. §1988(b), for costs expended herein, for interest, for equitable relief and for such other and further relief both at law and in equity, to which the plaintiff may show himself to be justly entitled.

DATED:   West Seneca, New York
April 14, 2010

*/s/ David W. Polak*
David W. Polak, Esq.
DAVID W. POLAK ATTORNEY AT LAW, P.C.
1370 Union Road, Suite 100
West Seneca, New York 14224
Telephone: (716) 675-2889